Teresa L. LUKE, individually and on behalf of their marital community and as Guardian ad Litem for her minor children; Andrew R. Luke, individually and on behalf of their marital community; Hayden R. Luke; Riley A. Luke, Plaintiffs—Appellants,

v.

FAMILY CARE AND URGENT MEDICAL CLINICS, a Corporation of Washington State; Robert D. Thornton; Howard Bruce Goodwin Pa–C; Family Urgency Care Clinics Minnehaha; Emergency Rooms, PS; Jerry J. Fisher, Defendants—Appellees.

No. 08–35192.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 22, 2009.

Filed March 30, 2009.

**498**

Christopher Otorowski, Esquire, Susan Carol Eggers, Esquire, Otorowski Johnston Diamond & Golden PLLC, Bainbridge Island, WA, for Plaintiffs–Appellants.

Michael D. Hoffman, Esquire, Janet M. Schroer, Hoffman Hart & Wagner, LLP, Portland, OR, for Defendants–Appellees.

Before: REAVLEY,* Senior Circuit Judge, and TALLMAN and M. SMITH, Circuit Judges.

## MEMORANDUM **

Teresa Luke ("Luke"), Andrew Luke, and their minor children (collectively, "Plaintiffs") appeal the district court's rulings in favor of physician's assistant H. Bruce Goodwin ("Goodwin"), his supervising physicians, and the medical clinic at which they all worked (collectively, the "Clinic Defendants"). The district court excluded as untimely expert declarations submitted by Plaintiffs in response to the Clinic Defendants' motion for summary judgment. Concluding that Plaintiffs' remaining expert disclosures failed to create a genuine issue of material fact regarding causation, the district court then granted

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

summary judgment in favor of the Clinic Defendants. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

We previously remanded this case to the district court to determine the admissibility of the expert declarations submitted by Plaintiffs in response to the Clinic Defendants' summary judgment motion. On remand, the district court granted the Clinic Defendants' motion to strike the declarations. We review the imposition of discovery sanctions for abuse of discretion, "giv[ing] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105–06 (9th Cir.2001).

A party must submit its expert witness disclosures "at the times and in the sequence that the court orders." Fed. R.Civ.P. 26(a)(2)(C). "Rule 37(c)(1) gives teeth to th[is] requirement[ ]" by automatically excluding any evidence not properly disclosed under Rule 26(a). *Yeti*, 259 F.3d at 1106. Moreover, where a discovery sanction is properly entered, Rule 37(b)(2)(A)(ii) provides that a court may "prohibit[ ] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Nonetheless, exclusion of evidence under Rule 37(c)(1) is not appropriate if the failure to disclose was either substantially justified or harmless. *Yeti*, 259 F.3d at 1106.

■ The district court did not abuse its discretion in excluding as untimely the expert declarations submitted by Plaintiffs in response to the Clinic Defendants'

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

summary judgment motion. Plaintiffs disclosed these declarations more than three months after the district court's deadline for initial expert disclosures, and more than two months after the deadline for rebuttal disclosures. Accordingly, these declarations were not timely under Rule 26(a)(2)(C). As Plaintiffs provided no justification—let alone substantial justification—for the untimely submission, this exception to Rule 37(c)(1) automatic exclusion is inapplicable. Nor did Plaintiffs satisfy their burden of proving harmlessness. *See Yeti,* 259 F.3d at 1107. Not only were the disputed declarations filed only four days before the close of discovery and ten weeks before trial, but, as explained *infra,* they presented a new theory as to a key element of Plaintiffs' medical negligence claim. They were properly excluded.

## II

To overcome the Clinic Defendants' motion for summary judgment, Plaintiffs had to establish through admissible evidence that, pursuant to Washington Revised Code § 7.70.040, a genuine issue of material fact existed for each of the two elements of their medical negligence claim: (1) that the Clinic Defendants "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances"; and (2) that the Clinic Defendants' failure to exercise this degree of care "was a proximate cause of Luke's liver failure. We review *de novo* a district court's grant of" summary judgment. *United States v. City of Tacoma,* 332 F.3d 574, 578 (9th Cir.2003).

■ As to the first element, the Plaintiffs' initial expert witness reports, whose admissibility is not challenged, establish a *prima facie* case supporting breach of the requisite standard of care by the Clinic Defendants. According to these reports, in order to ensure that his patient did not suffer an adverse reaction to Antabuse, Goodwin should have ordered baseline liver function tests when he first saw Luke on March 12, 2002, and he should also have ordered follow-up liver function tests between two and four weeks later. Unfortunately, Goodwin did neither.

■ Plaintiffs failed, however, to establish a genuine issue of material fact regarding causation. The initial expert reports stated that had "Goodwin obtained a follow-up liver function study within two to four weeks after prescribing Antabuse, more likely than not Teresa Luke's liver function studies would have been abnormally elevated." Because the experts opined that an adverse reaction would first be detectable at some point "within" two to four weeks, their disclosures create an ambiguity as to whether testing performed prior to the last day of the specified window would have revealed abnormally elevated results. For example, the statement leaves open the possibility that no abnormality would have been detected by a liver function test performed three weeks after Luke first ingested Antabuse. Only after the summary judgment motion had been filed did Plaintiffs' experts state that the abnormality would have presented itself ten days after Luke started on Antabuse. Accordingly, the district court did not err in entering summary judgment against Plaintiffs on the issue of causation.

## III

Plaintiffs nonetheless argue that the district court should have admitted the untimely expert declarations pursuant to Federal Rule of Civil Procedure 26(e), which requires supplementation of an ini-

tial expert disclosure "if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." But Rule 26(e) creates a "duty to supplement," not a right. Nor does Rule 26(e) create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed. Rather, "[s]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener v. United States*, 181 F.R.D. 639, 640 (D.Mont.1998).

█ The district court did not err in concluding that the Plaintiffs' untimely expert declarations were not admissible under Rule 26(e). These new declarations asserted a new theory of causation: "more likely than not, that had [liver function tests] been obtained at anytime beginning *10* days after initiating Antabuse . . . , the [liver function tests] would have been abnormally elevated." This new theory did not correct an inaccuracy in the Plaintiffs' original disclosures, nor did it fill in a gap based on information previously unavailable to the Plaintiffs. By offering this new theory advancing an earlier date on which liver function abnormality would have been revealed, the untimely declarations instead impermissibly attempted to fix the weakness, identified by the Clinic Defendants in their summary judgment motion, in Luke's ability to establish causation.

## IV

The district court did not abuse its discretion in excluding Plaintiffs' untimely expert declarations and properly entered summary judgment in favor of the Clinic Defendants for failing to establish a *prima facie* case of causation.

**AFFIRMED.**

M. SMITH, Circuit Judge, dissenting:

I respectfully dissent.

The law is well established that, in reviewing a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."); *Agosto v. Immigration & Naturalization Serv.*, 436 U.S. 748, 773 n. 10, 98 S.Ct. 2081, 56 L.Ed.2d 677 (1978) (Powell, J., dissenting) (viewing the facts in the light most favorable to the non-moving party means that the party opposing the summary judgment is to be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue exists); *see also Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (same).

Under this standard, I believe the court is obligated to interpret the evidence presented as proof that the defendant's failure to perform liver tests two to four weeks after Luke began taking Antabuse was the proximate cause of her liver failure. Luke's initial expert testimony, submitted into evidence far in advance of the discovery deadline, indicated that she would more probably than not have shown abnormal liver functions two to four weeks after she began taking the drug, which, we must reasonably infer, would more probably than not have been manifest in the tests that should have been given during that time period of two to four weeks.

The majority's conclusion that summary judgment is appropriate because the state-

501

ment presented by the experts "leaves open the possibility that no abnormality would have been detected" is erroneous as a matter of law, because it fails to give the non-moving party the benefit of all reasonable doubts and inferences. It is reasonable to infer that a test given two to four weeks after a certain date will reflect the abnormalities experts have testified will manifest themselves within that same two to four week time period. This inference can be drawn without consulting the untimely expert declarations excluded by the district court.

Accordingly, summary judgment is inappropriate even in light of our decision that the untimely expert declarations were properly excluded. I would therefore reverse the district court's ruling and remand for trial.