OTIS D. WRIGHT, II, UNITED STATES DISTRICT JUDGE
I. INTRODUCTION
Plaintiff Anita Laux initiated this action against Defendant Mentor Worldwide, LLC, on December 29, 2015, in Ventura County Superior Court. (Compl., ECF No. 1-2.) On February 12, 2016, Defendant removed this case to United States District Court for the Central District of California. (Notice of Removal, ECF No. 1.) Before the Court now are Defendant's Motions to Exclude the Opinions of Plaintiff's experts Dr. Susan Kolb, Dr. Pierre Blais, and Dr. Arthur Brawer. (ECF Nos. 60-62.) For the reasons discussed below, the Court GRANTS Defendant's Motions.
II. FACTUAL BACKGROUND
Defendant is a manufacturer of saline-filled inflatable breast implants ("Mentor Saline Breast Implants" or "breast implants"). (Compl. ¶ 12.) On December 30, 2005, Plaintiff underwent surgery and Plaintiff's doctor implanted Defendant's Mentor Saline Breast Implants. (Id. ) After the surgery, Plaintiff alleges that she began to suffer from, among other things, pain throughout her body, respiratory congestion, severe fatigue, and numbness. (Id. ¶ 16.)
In May 2014, Plaintiff alleges that she underwent several tests that revealed biotoxins from mold inside of the breast implants, and debris floating inside of the breast implants. (See id. ¶¶ 18-19.) On May 23, 2014, Dr. Susan Kolb removed the Mentor Saline Breast Implants and concluded that they were leaking bilaterally. (Id. ¶ 20.) In June 2015, Dr. Pierre Blais examined the breast implants. (Id. ¶ 23.) In his "Failure Analysis Report," Dr. Blais concluded that the Mentor Saline Breast Implants had defective valves, causing them to leak bilaterally. (See id. ¶¶ 23-30.) Dr. Blais also opined that the leaking breast implants caused Plaintiff to suffer from a variety of injuries, including debilitating biotoxin disease, auto-immune disorders, respiratory disease, and fibromyalgia. (Id. ¶ 30.)
Subsequently, Plaintiff brought this lawsuit, alleging that she has suffered injuries as a result of Defendant's manufacturing defects, negligence, and breach of warranty. (See generally Compl.) Plaintiff designated Dr. Kolb, Dr. Blais, and Dr. Brawer *1097 as experts to opine that her injuries are a result of Defendant's defective breast implants. (See ECF No. 69.) After completing discovery, on August 4, 2017, Defendant moved to exclude from trial the opinions of Plaintiff's proffered experts.[1] (ECF Nos. 60-62.) The Court will address each Motion to Exclude in turn.
III. LEGAL STANDARD
A. Expert Testimony
Federal Rule of Evidence 702 imposes a "gatekeeping" obligation on trial courts to "ensure that any and all scientific testimony ... is not only relevant, but reliable." Daubert v. Merrell Dow Pharm., Inc. , 509 U.S. 579, 589, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) ; see also Fed. R. Evid. 702. Courts exercise this function by excluding unreliable expert scientific testimony. Daubert , 509 U.S. at 589, 113 S.Ct. 2786. "The proponent of the expert testimony bears the burden of establishing by a preponderance of the evidence that the expert testimony is admissible under Rule 702...." Colony Holdings, Inc. v. Texaco Refining and Mktg., Inc. , No. SA-CV-00217-DOC (MLGx), 2001 WL 1398403, at *3 (C.D. Cal. Oct. 29, 2001). Rule 702 provides that expert testimony is admissible if the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education, and:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.
Fed. R. Evid. 702 ; see also Wendell v. GlaxoSmithKline LLC , 858 F.3d 1227, 1232 (9th Cir. 2017).
In Daubert , the Supreme Court provided guidelines for determining the reliability, and thus admissibility, of expert testimony. See Daubert , 509 U.S. at 579, 113 S.Ct. 2786. The court stressed that trial courts should focus their inquiry "solely on [a potential expert's] principles and methodology, not on the conclusions that they generate." See id. at 580, 113 S.Ct. 2786. The four factors provided by the court are: Whether (1) the theory "can be (and has been) tested"; (2) the theory "has been subjected to peer review and publication"; (3) the theory has a "known or potential rate of error"; and (4) whether or not the theory or technique enjoys "general acceptance" within a "relevant scientific community." Daubert, 509 U.S. at 592-94, 113 S.Ct. 2786 (internal quotation marks omitted). The Supreme Court has since emphasized that the list of non-exhaustive factors provided in Daubert are flexible, and are "meant to be helpful, not definitive." Kumho Tire Co. v. Carmichael , 526 U.S. 137, 151, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).
IV. DISCUSSION
A. Motion to Exclude the Opinions of Dr. Susan Kolb
Defendant requests that the Court exclude Dr. Susan Kolb's testimony, arguing that: (1) Dr. Kolb is not qualified as a biotoxin expert under Rule 702 ; (2) Dr. Kolb's differential diagnosis is not reliable; and (3) Dr. Kolb's opinions, in general, are not reliable under the Daubert factors. (ECF No. 61.) In opposition,[2] *1098 Plaintiff argues that Dr. Kolb's opinions are admissible, because she is recognized in the medical scientific community as a world-renowned expert in breast implants. (See generally ECF No. 89.) The Court agrees with Defendant and finds that Dr. Kolb is not sufficiently qualified to provide the proposed testimony and that her testimony is not reliable in this case.
First, Defendant argues that Dr. Kolb is not qualified to provide the opinion that Plaintiff suffers from biotoxin disease allegedly caused by mold inside of the Mentor Saline Breast Implants. (ECF No. 61 at 6.) Defendant argues that Dr. Kolb's education and expertise is in the field of plastic surgery and the testimony she seeks to provide "wanders far-afield from that which is reasonably within the province" of her qualifications. (Id. at 7.)
Dr. Kolb attended medical school at Washington University in St. Louis and completed her residency at Wilford Hall Medical Center. (Deposition of Susan Kolb ("Kolb Dep.") 21:13-18, ECF No. 61-2; see also Curriculum Vitae of Susan Kolb, ECF No. 61-4.) Dr. Kolb is certified in plastic surgery, reconstructive surgery, and holistic medicine. (See Kolb Dep. 21:21-22:2.) Since completing medical school in 1979, Dr. Kolb has worked in private practice as a plastic surgeon. (See id. at 22:17-23:4.) In this case, Dr. Kolb's diagnosis of Plaintiff's biotoxin disease is based on her experience as a treating physician, where she has treated over 500 women with biotoxin disease. (Id. at 9:5-7.) Dr. Kolb does not use any published or peer-reviewed medical literature to diagnose patients with biotoxin disease; rather, her diagnoses are based on her "vast amount of clinical experience." (Id. at 8:11-9:7.)
Defendant contends that Dr. Kolb's lack of medical training in immunology, mycology (the study of fungi), and infectious diseases,[3] disqualifies her from providing testimony concerning mold, biotoxins, or the mechanisms by which mold might enter a breast implant. (ECF No. 61 at 8.) The Court agrees with Defendant and finds that Dr. Kolb is not sufficiently qualified to testify regarding mold, biotoxins, and biotoxin disease.
Second, Defendant argues that Dr. Kolb's differential diagnosis methodology is not reliable. (ECF No. 61 at 8.) A differential diagnosis is "a patient-specific process of elimination that medical practitioners use to identify the most likely cause of a set of signs and symptoms from a list of possible causes." Stanley v. Novartis Pharm. Corp. , 11 F.Supp.3d 987, 1000 (C.D. Cal. 2014) (citations and internal quotations omitted). The first step in a differential diagnosis is to compile a list of potential causes of the ailment, then the expert must engage in a process of elimination to rule out those potential causes. See Nelson v. Matrixx Initiatives , No. C 09-02904 WHA, 2012 WL 3627399, at *6 (N.D. Cal. Aug. 21, 2012), aff'd sub nom.
*1099 Nelson v. Matrixx Initiatives, Inc. , 592 Fed.Appx. 591 (9th Cir. 2015). "[E]xpert testimony that neglects to consider a hypothesis that might explain the clinical findings under consideration may ... be unreliable," and thus, inadmissible under Daubert. Clausen v. M/V NEW CARISSA , 339 F.3d 1049, 1057 (9th Cir. 2003) ; see also Westberry v. Gislaved Gummi AB , 178 F.3d 257, 265 (4th Cir. 1999) (finding that "[a] differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation.")
Dr. Kolb's hypotheses for the potential causes of mold biotoxin in Plaintiff's body included: (1) living in an environment with mold; (2) having mold in her sinuses; (3) having fluid around the implants; and (4) faulty implant valves. (ECF No. 61 at 9.) Defendant argues that Dr. Kolb's differential diagnosis is flawed because she failed to reasonably rule out Plaintiff's exposure to environmental mold when making her biotoxin-disease diagnosis. (Id. ) Dr. Kolb usually tests for the presence of "TGF beta 1" in a patient to determine whether a patient has high levels of biotoxin from the environment. (Id. ) In her diagnosis of Plaintiff, however, Dr. Kolb did not test for TGF beta 1 to determine if Plaintiff had high levels of biotoxin from the environment. (Kolb Dep. 113:17-20.) Instead, Dr. Kolb relied solely on Plaintiff's statement that she had not been exposed to environmental mold because she thought Plaintiff would know if she was exposed to mold, or "if there was a water intrusion problem in the house." (See id. at 113:17-20.)
Dr. Kolb relied on this representation, as documented in her expert report dated November 18, 2016, where she stated that Plaintiff had developed biotoxin disease from defective implants, and that "[Plaintiff] had no other environmental mold exposure to account for these symptoms ." (ECF No. 61-4 (emphasis added).) In direct contradiction of this statement, Plaintiff emailed Dr. Kolb on May 5, 2014-nearly two and a half years earlier-and stated, "I have also been exposed to mold in the bedroom that I stay in when I visit my mother's home in Northern California. Last week, I found mold in the bedroom closet which has probably been there for a while." (ECF No. 61-5.) Thus, Dr. Kolb's exclusion of environmental mold as a possible cause of Plaintiff's injuries is directly contradicted by Plaintiff's earlier statement that she was exposed to mold found in her bedroom closet and mother's home. Further, Dr. Kolb's failure to test for TGF beta 1 also prevents her from ruling out environmental exposure from an objective perspective.
The inconsistency in Dr. Kolb's diagnosis and Plaintiff's statements regarding environmental-mold exposure goes to the core of the reliability of Dr. Kolb's differential diagnosis and the facts and data underlying her opinions in this case. "Unexplained selective use of the facts fails to satisfy the scientific method." Nelson , 2012 WL 3627399, at *10 (citation omitted). As recognized by the Ninth Circuit, a "differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation." Clausen , 339 F.3d at 1058 (quoting Westberry , 178 F.3d at 265 ). The Court finds that Dr. Kolb's differential diagnosis improperly failed to take into account the impact that environmental mold may have had on Plaintiff and is not sufficiently reliable.
Lastly, the lack of reliability of Dr. Kolb's methodology is further evidenced by the fact that none of her theories have been tested, peer reviewed, or generally *1100 accepted by the scientific community. (ECF No. 61 at 10-14.) In diagnosing Plaintiff with biotoxin disease, Dr. Kolb relied solely on her past experiences as a treating physician. (Kolb Dep. 9:5-7.) Dr. Kolb is unable to identify what mold, if any, was allegedly present in the breast implants manufactured by Defendant. (Id. at 53:9-11.) Moreover, Dr. Kolb acknowledges that the corpus of literature regarding biotoxin disease stems from Ritchie Shoemaker's non-peer-reviewed literature and research on biotoxins and "sick building syndrome," which have been excluded from various courts.[4] (See ECF No. 61 at 7; see also Kolb. Dep. 8:11-25.) Even if Dr. Kolb were to consult outside literature to support her biotoxin-disease diagnosis, she would nonetheless lack sufficient scientific support for her diagnosis. Thus, Dr. Kolb's inferential leap from Plaintiff's symptoms to the conclusion that Plaintiff suffered from biotoxin disease is unsupported by any peer-reviewed scientific literature or research. Plaintiff has failed to meet her burden of proving the admissibility of Dr. Kolb's testimony. The Court finds Dr. Kolb's expert testimony regarding mold, biotoxins, and biotoxin disease as unreliable. Therefore, the Court GRANTS Defendant's Motion to Exclude the Opinions of Dr. Kolb. (ECF No. 61.)
B. Motion to Exclude the Opinions of Dr. Pierre Blais
Defendant also seeks to exclude the opinions of Plaintiff's expert, Dr. Pierre Blais, as provided in his forty-four page "Failure Analysis Report." (ECF No. 62.) In his report, Dr. Blais opines that faulty valves manufactured by Defendant caused Plaintiff's breast implants to leak and become contaminated with microbiological organisms that caused Plaintiff's injuries. (ECF No. 62-4.)
Defendant argues that Dr. Blais is not qualified to offer opinions on microbiological organisms or faulty breast implant valves because Dr. Blais is a chemist, and was not formally educated or trained as a microbiologist, pathologist, medical doctor, or engineer. (ECF No. 62 at 8.) In his deposition, Dr. Blais testified that although he is not educated in microbiology, he is qualified to identify debris within the shell of a breast implant because he has worked alongside microbiologists. (See ECF No. 62 at 20; see also Deposition of Dr. Blais ("Blais Dep.") 87:16-88:2, ECF No. 62-6.) Defendant points out that Dr. Blais has sought to offer similar opinions in other breast implant cases, and those courts excluded the same opinions that he seeks to offer in this case.[5] (ECF No. 62 at 9-10.) One district court found Dr. Blais' report regarding defective breast implants"rife with conclusions about medical issues" that he is not qualified to provide, and that court further noted that Dr. Blais provides limited scientific literature to support his opinions. See In re Breast Implant Litig. , 11 F.Supp.2d 1217, 1241-42 (D. Colo. 1998). That court also stated, "Blais' asserted expertise in biomaterials does not make him qualified in the many areas of *1101 medical science in which he opines." Id. at 1242. The Court agrees, and finds that Dr. Blais is not qualified to provide opinions identifying debris as certain microbiological organisms because he does not have the skill, training, or expertise to do so, except for his claim that he has worked alongside microbiologists in the past.
Moreover, Defendant argues that Dr. Blais' opinions lack any discernible methodology to be considered reliable. (ECF No. 62 at 23.) In developing his opinions for this case, Dr. Blais did not test Plaintiff's breast implants, tissues, or blood, and did not establish a scientific basis for his conclusion that Plaintiff's injuries were caused by Defendant's breast implants. (Id. ; see also Blais Dep. 20:15-21:14.) Defendant asserts that Dr. Blais' " 'methodology' essentially consists of looking at explanted breast implants, sometimes with the aid of a microscope, making a few notes and drawing pictures of what he claims to see." (ECF No. 62 at 21.) Neither Plaintiff nor Dr. Blais explain how Dr. Blais' methodology, which lacks any form of scientific reliability as described, conforms to methods typically used by scientists in the field. See Daubert , 509 U.S. 579, 113 S.Ct. 2786. The Court agrees with Defendant that Dr. Blais' methodology, which has not been independently tested or peer reviewed, amounts to a subjective exercise, and thus is not reliable.
Dr. Blais also opines that the valves in the breast implants are defective. (Blais Report, ECF No. 62-4 at 13 ("The valve dysfunction reflected manufacturing defects including incorrectly-molded and deformed parts.") ) Yet, Dr. Blais took no measurements of the valves to support his opinion they contained manufacturing defects. (Blais Dep. 149:2-13, 150:2-6.) Instead, Dr. Blais stated that he "eyeball[ed]" the valves to determine they were faulty. (Id. ) More importantly, Dr. Blais did not possess Defendant's valve design specifications when he concluded that the valves on Plaintiff's implants were defective. (Id. at 184:7-11.) Instead, Dr. Blais utilized old documents and his own memory. (Blais Dep. 183:4-22.) This methodology is questionable at best.
Furthermore, Dr. Blais has not published any of his theories on bacterial or fungal colonization of saline implants in peer-reviewed literature. (ECF No. 62 at 24.) Defendant argues that all of the peer-reviewed literature on this topic actually refutes Dr. Blais' theory. (Id. ) Dr. Blais claims that "he has twice attempted to publish his theory, but was twice rejected after being told by editors that 'this was a resolved issue.' " (Id. at 25; see also Blais Dep. 166:21-167:11.) Thus, the Court finds that Dr. Blais' theories regarding Plaintiff's breast implant valves are unsupported by peer-reviewed literature or research.
Based on the aforementioned reasons, the Court finds that Dr. Blais' opinions are not reliable. Numerous other courts have reached the same conclusion regarding Dr. Blais' proffered testimony. See, e.g. , Giddings v. Bristol-Myers Squibb Co. , 192 F.Supp.2d 421, 425-26 (D. Md. 2002) (finding that Dr. Blais is "unqualified to state an opinion on product defects"); Grant v. Bristol-Myers Squibb , 97 F.Supp.2d 986, 991 (D. Ariz. 2000) (observing that "Blais is not a medical doctor and has not supported his theories with testing" and "[a]s such, Blais may not testify as to any opinion he may have as to defects of breast implants or any other topic that is beyond his qualifications as a chemist"); Cabrera v. Cordis Corp. , 134 F.3d 1418, 1423 (9th Cir. 1998) (finding that Dr. Blais relies on "underground knowledge, untested and unknown to the scientific community"); In re Breast Implant Litig. , 11 F.Supp.2d at 1242-43 (stating that Dr. Blais' opinions *1102 "amount to nothing more than subjective opinions").
Therefore, the Court GRANTS Defendant's Motion to Exclude the Opinions of Dr. Blais. (ECF No. 62.)
C. Motion to Exclude the Opinions of Dr. Arthur Brawer
Defendant also seeks to exclude the opinions of Plaintiff's expert, Dr. Arthur Brawer, because (1) his expert report does not satisfy the requirements of Federal Rule of Civil Procedure 26, and (2) his report is not reliable under Daubert .[6] (ECF No. 60.)
First, Defendant argues that Dr. Brawer's opinions should be excluded because his report fails to satisfy Rule 26. (Id. ) Rule 26 provides in pertinent part that an expert retained specially to provide expert testimony must prepare a written report that contains:
(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them ... (v) a list of all other cases ... the witness testified as an expert ... (vi) a statement of the compensation to be paid for the study and testimony in the case.
Fed. R. Civ. P. 26(a)(2)(B). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." Yeti by Molly, Ltd. v. Deckers Outdoor Corp. , 259 F.3d 1101, 1106 (9th Cir. 2001) (footnote omitted).
Defendant argues that, among other deficiencies, Dr. Brawer's report fails to provide: (1) The basis and reasons for his opinion that Plaintiff suffers from "breast implant toxicity"; (2) the facts and data that he considered in forming that opinion; (3) a list of cases in which he has testified; or (4) the amount that he is being compensated to provide opinions in this case. (ECF No. 60 at 7; see also Report of Dr. Arthur Brawer, ECF No. 60-2.)
Defendant contends that Dr. Brawer's report merely summarizes Plaintiff's medical history and the symptoms she experienced during the physical exam he conducted. (ECF No. 60 at 7.) On this point, Defendant argues that the report also fails to provide the facts and data that Dr. Brawer considered in determining that Plaintiff's breast implants were "toxic," the methodology he employed in concluding they were "toxic," or how her "toxic" implants caused her injury. (Id. ) Defendant argues that "[i]n essence, Dr. Brawer gives a toxicology opinion with no data in support of that opinion whatsoever. " (Id. (emphasis in original).) The Court agrees with Defendant on these points and finds that Plaintiff has not satisfied the requirements outlined by Rule 26 in regard to Dr. Brawer's report.
Second, Defendant argues that Dr. Brawer's opinions should be excluded from trial as unreliable under the Daubert factors. (Id. at 13.) Defendant contends that Dr. Brawer's report fails to explain his methodology or show how his opinion that Plaintiff suffers from "breast implant toxicity" is based on actual scientific facts and methods. (See id. at 12.) Further, Defendant argues that Dr. Brawer's report "does not even identify the toxic substance *1103 at issue, let alone how that substance can cause injury" such as to prove general or specific causation. (Id. ) The Court agrees and finds that Dr. Brawer's report provides no support for his "because I said so" conclusion regarding breast implant toxicity. See Gen. Elec. Co. v. Joiner , 522 U.S. 136, 137, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (finding that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert"); see also Kennedy v. Collagen Corp. 161 F.3d 1226, 1228 (9th Cir. 1998) (stating that the court may reject expert testimony where it determines that the analytical gap between the underlying data and the expert's opinion are too great).
Under Federal Rule of Civil Procedure 37, a party who fails to provide information required by Rule 26(a) is not allowed to use the information or witness to supply evidence at trial unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). In this case, Plaintiff does not argue that the non-compliance of Dr. Brawer's proffered report is substantially justified or harmless. Moreover, under Federal Rule of Evidence 702 and Daubert , the Court is obligated to act as a gatekeeper to determine the reliability of expert testimony. See Daubert , 509 U.S. 579, 113 S.Ct. 2786. Here, the Court finds that Dr. Brawer's report fails to satisfy several requirements of Rule 26, and his report is so lacking of scientific principles and methods that the Court cannot find his opinions reliable or helpful in this case. Therefore, the Court GRANTS Defendant's Motion to exclude the expert report of Dr. Brawer. (ECF No. 60.)
V. CONCLUSION
For the reasons discussed above, the Court GRANTS Defendant's Motions to Exclude the Opinions of Dr. Susan Kolb, Dr. Pierre Blais, and Dr. Arthur Brawer. (ECF Nos. 60-62.)
IT IS SO ORDERED.

On September 11, 2017, the Court heard Defendant's arguments on the instant Motions and the Court took the matter under submission. (ECF No. 90.)

Plaintiff filed "Opposition to Defendant's Objection Document" on September 11, 2017, which the Court will treat as an opposition to Defendant's instant Motions. (ECF No. 89.) See generally Draper v. Coombs , 792 F.2d 915, 924 (9th Cir. 1986) (acknowledging that pro se litigants should be treated with "great leniency" for not knowing the "technical rules of civil procedure"); see also Me Lee v. Choi , No. 2:07-cv-07026-FMC-AJWx, 2008 WL 11336967, at *3 (C.D. Cal. Aug. 26, 2008) (stating that "[c]ourts do and should show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education." (citation omitted) ).

Defendant points out that "Dr. Kolb is not a rheumatologist, immunologist, neurologist, infectious disease physician, microbiologist, or psychologist." (ECF No. 61 at 7 (citing Kolb Dep. 22:3-16).) Additionally, in her deposition, Dr. Kolb admitted that she does not know whether all mold is toxic, because she is not a mycologist. (See id. at 51:18-19.)

Several courts have found that Dr. Shoemaker's research and methodology fail to satisfy Daubert . The district court in Young v. Burton found Dr. Shoemaker's diagnostic process "inherently flawed" and unsupported by scientific literature; thus, his opinions regarding biotoxins were excluded. See, e.g. , Young v. Burton , 567 F.Supp.2d 121 (D.D.C. 2008), aff'd , 354 Fed.Appx. 432 (D.C. Cir. 2009).

Defendant argues that, "Dr. Blais' report largely regurgitates his autoinflation theory-that faulty valves 'offered an open pathway for bidirectional flow' which allowed the implants to be 'colonized with microbiological entities' " resulting in Plaintiff's injuries. (ECF No. 62 at 10; see also Exhibit C of Defendant's Motion, ECF No. 62-4.)

Defendant contends that it was unable to depose Dr. Brawer as a result of Plaintiff's former counsel unilaterally cancelling his deposition. (ECF No. 60 at 8-9.) Because the Court finds Dr. Brawer's opinions inadmissible under Daubert , the Court declines to address the merits of Defendant's argument to exclude Dr. Brawer's opinions, on the ground that Plaintiff's counsel did not make him available for deposition.