**In re CENTRAL EUROPEAN INDUSTRIAL DEVELOPMENT COMPANY, LLC d/b/a CEIDCO, Debtor.**

**In re The Kontrabecki Group LP, Debtor.**

**Aron M. Oliner, et. al., Plaintiffs,**

**v.**

**John Kontrabecki, et. al., Defendants.**

**Bankruptcy Nos. 02–30419DM, 02–30421DM.**
**Adversary No. 03–3264DM.**

United States Bankruptcy Court, N.D. California.

Oct. 8, 2009.

Opinion Denying Reconsideration March 31, 2010.

ure, whether or not the $158.10 is considered.

Joan M. Chipser, Law Offices of Joan M. Chipser, Millbrae, CA, David Replogle Law Offices of David Replogle San Francisco, CA, for Debtor.

Aron M. Oliner Law Offices of Duane Morris San Francisco, CA, pro se.

## MEMORANDUM DECISION REGARDING MOTION FOR PARTIAL SUMMARY JUDGMENT

DENNIS MONTALI, Bankruptcy Judge.

### I. *INTRODUCTION*

October 2, 2009, the court heard argument on the motion of defendant John Kontrabecki ("Kontrabecki") for partial summary judgment on the delay damages claim of plaintiff Lehman Brothers Holding, Inc. ("Lehman"). Appearances were noted on the record.

During the course of the hearing the court indicated that it would deny Kontra-

becki's motion insofar as it was based upon his Mitigation Of Damages defense, namely Lehman's rejection of what Kontrabecki described as a settlement proposal.[1] The other portion of Kontrabecki's motion (the "Motion") pertains to Kontrabecki's contention that Lehman has not provided competent evidence to support a crucial element of its "lost opportunity" or "delay damages" claim. For the reasons that follow, the court will grant the Motion.[2]

## II.  *BACKGROUND* [3]

The thrust of Lehman's delay damages claim is that, but for Kontrabecki's conduct in early 2003 in causing what the parties have described as the Share Dilution Transactions, the real property of The Kontrabecki Group, LLP's wholly owned Polish subsidiaries, Warszawskie Centrum Dystrybucyjne Sp. zo.o. and Centrum Biznesu Ozarow Sp. zo.o. ("WDC" and "OBC", respectively) would have been liquidated in 2003 or early 2004, with the net proceeds then available to Lehman to invest.

Lehman must prove at least four crucial facts to make a prima facie case on its claim for delay damages (the "elements of proof"): (1) what and when would Mr. Oliner, the Chapter 11 trustee in The Kontrabecki Group, LLP case, have done or caused to be done in these bankruptcy cases and on behalf of WDC and OBC in Poland to begin the process of liquidating those two subsidiaries' real property; (2) what was the value of those properties had

they been sold; (3) how long would be needed to complete those hypothetical sales; and (4) what opportunities did Lehman lose by having to wait until the properties were actually sold following reversal of the Share Dilution Transactions and completion of the Polish bankruptcies?

Based upon the expert testimony of James Brogan ("Brogan"), Lehman would have realized a substantial return on its investment of the those liquidation proceeds beginning in late 2003 or 2004. Brogan set forth (though Kontrabecki challenged both with his own expert and his *Daubert* motion that the court denied in relevant part on the record at the hearing) a methodology to calculate the delay damages based on Lehman's actual financial results in the years between the hypothetical sales in 2003 or 2004 and the actual sales of the WDC and OBC real properties and the return to Lehman of nearly $34 million between November, 2006 and August, 2007.

Lehman disclosed Brogan as its financial expert by the March 4, 2009 deadline in the court's amended scheduling order (docket # 1719). This is how it dealt with element of proof (4).

To support its contention as to the value that would have been realized had the WDC and OBC properties been sold in 2003 or 2004, (element of proof (2)) it offered the expert report of Monika A. Debska ("Debska"). That report (in fact four similar reports for WDC and OBC,

---

1.  Lehman has made a countermotion for partial summary adjudication regarding mitigation that will not be addressed in this Memorandum Decision.

2.  Lehman filed an ex parte motion to reopen and supplement the record of the Motion on October 6, 2009 (the "ex parte motion"). Kontrabecki has not yet responded but has advised the court that he will oppose it. The importance to the parties of this ruling on the Motion convinces the court of the need to rule

without waiting any longer. And even without a response, the court finds nothing in the ex parte motion to change the result, so granting it would serve no purpose. The motion will be DENIED, for the reasons explained in the text.

3.  The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr.P. 7052(a).

respectively, setting forth their properties' values as of September 30, 2003, and January 1, 2004, respectively will be referred to herein as the "Report").

The Report includes Appendix 1, Terms of Engagement. The Terms of Engagement are set forth in a letter of December 6, 2008, from Debska to Lehman's counsel and is replete with references and indications of Debska's assignment, viz., the valuation of WDC's and OBC's real properties. Specifically, the reference line of the letter begins "Valuation of properties...." The letter then goes on to set out the terms of engagement of Debska's firm "regarding the valuation of two properties in Poland ... and to act as an expert witness....". The specific purpose of the valuation was "... to arrive at the retrospective market value of the subject properties as at (sic) September 30, 2003 and January 1, 2004." [4]

Section 2.3 "Purpose and scope evaluation," indicates Debska's firm will provide Lehman "... with our opinion of the Market Value of the subject properties." Also included in the report are General Principles Applying To All European Valuations Undertaken In Accordance With The "PEGoVA European Valuation Standards 2003." Those standards include a traditional definition of market value ("a willing buyer and a willing seller in an arm's length transaction after proper marketing ..."). The European Union Market Value paragraph recites an assumption that "the property is publicly exposed to the market, that market conditions permit orderly disposal and that a normal period having regard to the nature of the property, is available for the negotiation of the sale."

The Report begins with an Executive Summary that sets forth the identification of the respective properties, the site inspection date, the valuation dates, and the market values. The Executive Summary is followed by thirty-five pages containing extremely detailed discussions of various factors that have been considered. At the end of section 17.3, Debska sets forth her conclusions as to the market value. In the court's experience, the Report is a typical, professionally prepared real property valuation.

Then, beginning in section 18.0, "Commentaries," there are three brief statements about marketability. The final sentence reads:

"Having regard to the features of the subject property and conditions of the Warsaw industrial market as well as the investment market we consider that a sale period of 6–12 months was reasonable to complete the transaction."

That single sentence is the only place in the Report that contains so much as a hint of the subject Lehman now contends Debska is qualified to opine on (element of proof (3)), namely the time to market and sell the WDC and OBC properties ("Time to Sell").

Without competent expert opinion on Time to Sell, Lehman has not established, as it concedes it must, when the WDC and OBC properties would have been sold and Lehman would have received the sale proceeds in order to begin to realize the return on equity described by Brogan.[5]

---

**4.** The ex parte motion infers that these and other similar references are consistent with Debska's identification as the expert to opine on element of proof (3) but in the court's view they do nothing of the sort.

**5.** The court is not presently concerned about determining how long the initial steps preparatory to beginning the sales process in Warsaw would take (see Memorandum in Support of Motion, 5:24-6:7.) In other words, element of proof (1) has been adequately established

When Kontrabecki filed his Motion, Debska had not been identified as Lehman's Time to Sell expert and in fact the only writing available to Kontrabecki was the Report and its scant commentary about marketability quoted above. In response to the Motion, Lehman filed on September 8, 2009, an opposition and a September 3, 2009 declaration of Debska (the "Declaration"). This was less than three weeks before the first scheduled hearing on the Motion, and only a few days before Kontrabecki's reply to Lehman's opposition to the Motion was due, and months after expert discovery had closed.

In paragraph 2 of the Declaration, Debska discloses for the first time that she has been engaged by Lehman's counsel to provide testimony regarding the valuation and "... related subjects, including the process of and time required for marketing and selling the projects during the relevant historical periods." This additional provision of Debska's engagement was not disclosed in the Report or the supporting appendixes, including the December 6, 2008 Engagement Letter.

In paragraph 9 of the Declaration, Debska has devoted 16 lines to support what Lehman now sponsors as the Time to Sell opinion (element of proof (3)), concluding that it would take between six and twelve months to dispose of the WDC and OBC properties. The time period, according to Debska, would include the engagement of a real estate sales broker or agent; the preparation of marketing materials and identification of prospective purchasers; receipt and evaluation of bids; negotiation of terms of sales; buyers' due diligence and negotiations of price or terms; negotiations and signing of preliminary and final purchase documents; closing of the sales and distributions of sale proceeds. Debska did not include in the Declaration any

to defeat Kontrabecki's motion for partial

specifics, details or bases to indicate how she reaches these ultimate conclusions to support her Time to Sell opinion.

In the ex parte motion, other than pointing to a few isolated items in the Report that arguably—but not convincingly—suggest that Debska was opining on Time to Sell, the principal point seems to be that Kontrabecki's counsel knew through e-mails that Lehman would show at trial that the sales of WDC's and OBC's properties would occur in the same time frame as indicated by Brogan, September 30 or December 31, 2003, and that Lehman's valuations would be as of those dates. The problem is that Lehman's counsel did not mention that Debska and her Report (to be presented to Kontrabecki three months later) or the Declaration (to be filed ten months later) would be the source of expert proof of those dates. Thus there simply was no adequate advance notice to Kontrabecki that Debska's later allusion to "6–12 months" in the commentary on marketability in the Report would constitute her Time to Sell opinion.

## III. *ISSUES*

The court is presented with the following issues:

1. Was the Report adequate to constitute an expert report under Fed. R. Bankr.P. 7026, incorporating Fed.R.Civ.P. 26 ("Rule 26") on Time to Sell?

2. Did the Declaration amount to a satisfactory expert report?

3. Did Kontrabecki have a duty to do anything when he had only the Report and its one sentence reference to the six to twelve month time frame for the sale of the properties?

summary judgment.

4. What are the consequences to Lehman based upon the inadequacy of the Report and the Declaration?

## IV. DISCUSSION

### 1. The Report is not an expert report under Rule 26(a)(2)(B).

■■■ Rule 26(a)(2)(A) requires that a party disclose the identity of any expert who may testify at trial. This disclosure must be accompanied by a written report prepared and signed by the witness. The report must contain, *inter alia,* "a complete statement of all opinions to be expressed and the basis and reasons therefor." *See* Rule 26(a)(2)(B)(i)-(vi). The Advisory Committee's Note to the 1993 amendments to Rule 26 reveals that the report to be provided is to be "a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." In other words, the report should offer the "how and why" of the results, not mere conclusions. *Allgood v. Gen. Motors Corp.,*2006 WL 2669337 at *4 (S.D.Ind. Sept. 18, 2006)(citing *Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 742 n. 6 (7th Cir.1998)); *Reed v. Binder,* 165 F.R.D. 424, 429 (D.N.J.1996)(expert reports must include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions).

■■■ "A report is deficient if it fails to include any of the underlying conclusions on which the expert's ultimate opinions are based." *Atkins v. County of Orange,* 372 F.Supp.2d 377, 395 (S.D.N.Y.2005). Bald conclusions or brief statements of ultimate conclusions with no explanation of the basis and reasons therefor, or the absence of a statement of how the facts support the conclusions, do not satisfy Rule 26(a)(2)(B) requirements. *Id.; Ohime v. Foresman,* 186 F.R.D. 507, 508-09 (N.D.Ind.1999) (ex-

pert testimony excluded due to insufficient basis for expert's conclusory opinions); *Campbell v. McMillin,* 83 F.Supp.2d 761, 764 (S.D.Miss.2000)(noting that the most important element of a Rule 26 analysis is whether the report contains complete statement of opinions and basis therefor).

Lehman contends that no "separate" expert was contemplated or necessary to opine about the Time to Sell, and Kontrabecki was aware that Debska's engagement was to "do what she did in the Report." Even assuming that Debska is a qualified expert to opine on the Time to Sell, and that she was properly identified and disclosed as such via the Report, the question here is whether the portion of the Report on Time to Sell satisfies the requirements of expert reports under Rule 26(a)(2)(B). The court concludes it does not.

The deficiency in Debska's Report lies in Rule 26(a)(2)(B)(i) which mandates that expert reports contain "a complete statement of all opinions the witness will express and *the basis and reasons therefor."* (emphasis added) While the valuation portion of the Report is substantial and not challenged or at issue here, the only portion of her Report that could arguably be considered an opinion on the Time to Sell is the noted single sentence statement found on page 41. Debska's statement is nothing more than a conclusory opinion with no explanation of the basis and reasons therefor. This is far from the detailed and complete written report required under Rule 26(a)(2)(B). It is totally devoid of the "how and why"—precisely the problem the amended rule was designed to cure. There is no support for—and the court rejects—Lehman's bold statements that Debska's Time to Sell opinion:

"... clearly satisfies Lehman's disclosure obligations under Fed.R.Civ.P.

26(a)(2)(B), which provides, in pertinent part, that an expert witness report must 'contain a complete statement of all opinions the witness will express and the basis and reasons for them; [and] the data or other information considered by the witness in forming them.' Fed. R.Civ.P. 26(a)(2)(B)(i), (ii)."

followed by the accompanying footnote that states, in part:

"Kontrabecki provides no authority that 'evidentiary support' or 'further discussion' is required. Indeed, FRCP 26(a)(2)(B) sets forth no such requirement—Ms. Debska's statement is as 'complete' as it needs to be for expert report purposes. . . ."

Lehman Opposition to Kontrabecki's Motion to Strike Declarations, etc., filed September 30, 2009 (docket # 1898.)

Consequently, the court concludes that the portion of the Report dealing with Time to Sell does not comply with the report requirements of Rule 26(a)(2)(B).

### 2. *The Declaration, together with the Report, is not timely or sufficient.*

■ The next question is whether Debska's more detailed Declaration cures the deficiencies of what is an otherwise inadequate report on Time to Sell. The court rejects Debska's Declaration for two reasons.

Although the Declaration is certainly more expansive on the subject of Time to Sell, it suffers from the same deficiencies as her initial Report. While it recites some facts that apply in virtually every sale of real property (employment of broker; evaluation of bids; negotiation; closing), it does not include any specifics as to how she reaches the ultimate conclusion that it would take six to twelve months to sell the properties and distribute the proceeds. There is nothing about the length of time to locate and select a broker; how,

where and for how long to market the properties; the likely time for buyers' due diligence; any regulatory delays; time for completion of documentation; title matters; closing details.

Second, whether the court considers the Declaration as a new report or a supplement to her initial Report, it is untimely. According to the amended scheduling order, the deadline for Lehman to provide Kontrabecki with Debska's Report was on February 17, 2009. Thus, if Debska was to be the Time to Sell expert, she was required to set forth all of her opinions and bases for those opinions by that date. *See* Rule 26(a)(2)(C)(disclosure of expert reports "shall be made at the times and in the sequence directed by the court").

■ If the Declaration is viewed as a "new" report offering an opinion of the Time to Sell, it was not filed nor disclosed to Kontrabecki until September 8, 2009, and only after he filed his Motion. Therefore, regardless of its deficiencies, filing an undisclosed expert report long after the deadline is an improper attempt to circumvent the expert discovery schedule established by this court. *See Firefighter's Inst. for Racial Equal. ex. rel. Anderson v. City of St. Louis,* 220 F.3d 898 (8th Cir.2000)(affirming district court for striking an untimely disclosure of expert and expert's report under Rule 16).

■ If the Declaration is viewed as a "supplement" setting forth information, reasoning and opinions in order to cure that part of her Report's deficiencies, Rule 26 required such things to be disclosed in her critical initial Report. "The purpose of . . . supplementary disclosures is just that—. . . to supplement. These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter*

*v. Cedar Point Oil Co., Inc.*, 73 F.3d 546 (5th Cir.1996)(holding that district court did not abuse its discretion for excluding expert's supplement disclosure since Rule 26(a) requires that the initial disclosures be complete and detailed); *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 822 (N.D.Ill.2005) (court refused to consider expert's untimely declaration attempting to explain basis for his opinions in his deposition or earlier reports); *Keener v. U.S.*, 181 F.R.D. 639, 640 (D.Mont.1998)(court rejected untimely disclosure of expert opinion testimony, permitting expert to testify only to opinions expressed in his initial disclosure).

Accordingly, the court concludes that Debska's deficient and untimely Declaration does not comply with the report requirements of Rule 26(a)(2)(B).

### 3. *Kontrabecki was not obligated to do anything following receipt of the Report.*

■ Kontrabecki contends in his Motion that Lehman failed to disclose an expert or expert report to opine on the Time to Sell issue despite his repeated interrogatory requests. In fact, he stated in his reply brief and at oral argument that Lehman's opposition to his Motion was the first time Lehman disclosed Debska as the expert on that issue, or that Lehman intended to rely on the single sentence statement regarding the six to twelve month time frame as the Time to Sell report. Nothing in the ex parte motion calls these assertions into question.

Lehman contends, citing the Rutter Practice Guide, that if Kontrabecki considered Debska's Report to be deficient on the Time to Sell issue, then he had plenty of opportunity to depose her, meet and confer, file a motion to compel, or take some other affirmative action to learn of the basis for her opinion. In other words,

because Kontrabecki sat on his rights, he cannot now claim surprise. The court disagrees.

First, Lehman's argument presumes Kontrabecki had a reasonable basis to assume that Debska's single sentence about the six to twelve months time frame was her Time to Sell report. Considering the Report in its entirety, and the commentary following the conclusion as to value in context, Kontrabecki, or even the court, would have no reasonable basis to make this assumption. The record reflects that Kontrabecki propounded interrogatories on Lehman, asking it to disclose who would testify as to sale dates, never receiving a satisfactory answer until it was too late.

Further, when Kontrabecki finally learned of Debska's expanded assignment via Lehman's opposition to his Motion and the Declaration filed just days before the Motion hearing, his only real opportunity to respond was through his reply brief, which he did, long after the expert witness discovery deadline.

■ Finally, whether or not Debska's single sentence statement on page 41 of the Report was a sufficient Rule 26(a) disclosure by Lehman that she was the expert establishing the Time to Sell dates, the self-executing nature of the amended Rule 26 suggests that Kontrabecki had no duty to do anything. Exclusion of an inadequate expert report is not dependant upon a motion to compel disclosures because the party retaining the adverse expert has an obligation under the rules to provide this information without a request or demand from opposing counsel. *See* Stephen D. Easton, *Attacking Adverse Experts* 48 (ABA Publishing 2008). Contrary to Lehman's argument, an opposing party is not required to file a motion to compel or depose the expert in order to develop what her opinion is or the reasons for it.

*See Bonesmo v. Nemours Found.*, 253 F.Supp.2d 801, 811 (D.Del.2003); *Net 2 Press, Inc. v. 58 Dix Ave. Corp.*, 266 F.Supp.2d 146, 160 (D.Me.2003)(acknowledging plaintiff's argument that defendants had other avenues available to them if they believed a discovery violation occurred, but this did not mean that defendants could not seek relief via a motion to strike); Easton, *Attacking Adverse Experts* at 58–59 ("If you believe the report is deficient, you again have to make a decision from among several options. Your options include the following: Do nothing, and later filing a motion to exclude the adverse expert's testimony, or a portion of it;" "If you receive a faulty expert witness report, sometimes the best option ... is to do nothing at all for the time being, then file a motion later to exclude the expert's testimony."). As evidenced by the changes to Rule 26, effective some 16 years ago, their purpose was to greatly reduce, or possibly eliminate, the need for depositions of experts. *See Salgado*, 150 F.3d at 742 n. 6 (stating that an expert report must be detailed and complete so that "opposing counsel is not forced to depose an expert in order to avoid ambush at trial and sufficiently complete so as to shorten or decrease the need for expert depositions and conserve resources").

Therefore, Lehman's suggestion that Debska's testimony should not be stricken because Kontrabecki failed to take affirmative steps to learn of the basis for Debska's expert Time to Sell opinion, presuming he even knew she was the intended expert, is not well-taken.

### 4. *Kontrabecki is entitled to Partial Summary Judgment on Lehman's Delay Damages theory.*

Under Rule 37(c)(1), a party who without substantial justification fails to disclose information in compliance with Rule 26(a)

"shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." A failure to disclose the information required by Rule 26(a)(2)(B) results in an exclusion of the expert testimony at trial. Fed.R.Civ.P. 37(c)(1); *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir.2001)(citing to the Advisory Committee Note on Rule 37 (1993) which describes the Rule as a "self-executing," "automatic" sanction to "provide[ ] a strong inducement for disclosure of material....").

■ Federal courts strictly enforce the expert witness disclosure requirements in Rule 26(a)(2)(B), and courts have wide discretion to impose sanctions for an untimely or inadequate expert disclosure including the exclusion of expert witness testimony. *Yeti*, 259 F.3d at 1106. Exclusion of expert testimony "is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)." *Id.*

■ However, the nondisclosing party can avoid exclusion under Rule 37(c)(1) if it has substantial justification for the inadequate disclosure, or if the party's failure to disclose is harmless. *Id.* The burden is on the party opposing the exclusion to establish such exceptions. *Id.* at 1107. Here, Lehman has not provided substantial justification to cause the court to overlook the serious deficiencies of Debska's Report on the Time to Sell issue. Lehman stated at oral argument that it intends on resting its case with Debska's opinion on the Time to Sell since how long it takes to sell a property is inherent in an appraisal report. Debska's single sentence, unsupported, conclusory opinion on the Time to Sell simply and clearly does not comply with Rule 26(a)(2)(B), and her late Declaration cannot save the day.

Further, Lehman has not shown that its inadequate or untimely disclosure is harmless. Trial has been scheduled for late October for some time and only recently was continued (and shortened) to November 2. September 18, 2009, letter to court from both counsel (to be docketed). Not properly identifying an expert witness or her opinion until six weeks before trial, and then only making the disclosure when faced with an opponent's summary judgment motion, cannot be considered harmless.

For the reasons stated above, the court will strike the portion of the Report opining on Time to Sell, as well as those related portions of the Declaration filed in support of Lehman's opposition to the Motion.

In this case, Debska is only witness who could possibly provide a competent expert opinion to establish element of proof (2), the date(s) when the WDC and OBC properties would likely have been sold and when Lehman would have received the proceeds but for the Share Dilution Transactions. Since Lehman will be precluded from presenting Debska's testimony, it will not be able to establish a prima facie case regarding a date for when the clock began to run on its delay damages claim.

Accordingly, no genuine issue of material fact exists and partial summary judgment on this issue in favor of Kontrabecki is warranted.

## V. CONCLUSION.

For the foregoing reasons, Kontrabecki is entitled to partial summary judgment. Counsel should prepare and serve a proposed order granting the Motion in part, as provided above, and denying it as to the Mitigation of Damages defense, and should comply with B.L.R. 9021–1.

The court will hold a status conference on October 14, 2009, at 9:30 A.M. to discuss future scheduling in this adversary proceeding

## MEMORANDUM DECISION ON MOTION FOR RECONSIDERATION OF PARTIAL SUMMARY JUDGMENT RE LOST OPPORTUNITY DELAY DAMAGES

■■■ For the reasons that follow, the court will deny the motion ("Motion to Reconsider"; Dkt. #1914) of Lehman Brothers Holdings, Inc. ("Lehman") to reconsider its Memorandum Decision Regarding Motion For Partial Summary Judgment (the "PSJ Decision"; Dkt. #1903) in favor of defendant John Kontrabecki ("Kontrabecki").[1]

Kontrabecki filed his motion for partial summary judgment ("PSJ Motion") on July 31, 2009, arguing that "Lehman has not produce (sic) **any** evidence that would support its assertion that it would have received sales proceeds on (September 30 and December 31, 2003)". (Dkt. #1839, at 2:19–21; emphasis in original). While the burden is generally on a moving party to demonstrate entitlement to summary judgment, where the non-moving party has the burden at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Instead, the non-moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. *Id.* That shifts the burden back to the non-moving

---

1. The court did not enter the Order Granting Partial Summary Judgment following the PSJ Decision until February 12, 2010 (Dkt.# 1969). The Motion to Reconsider obviously relates to that order, although the reasoning of the PSJ Decision is what the court has been asked to reconsider.

party to show a genuine issue of material fact to be resolved at trial. Fed. R. Bankr.P. 7056(e), incorporating Fed. R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324.

Lehman opposed the PSJ Motion, urging that the expert report ("Report") of Monika A. Debska ("Debska") and her September 3, 2009, declaration (the "Declaration", Dkt. # 1868) establish "... all the foundational facts necessary for the Court to conclude that ... it is reasonably probable that the WDC and OBC properties would have been sold, and Lehman would have received the proceeds, in the latter part of 2003 or by the beginning of 2004." Lehman Opposition at 16:26–17:1. If not so established, Lehman argued that its evidence created a factual issue that could not be resolved by summary judgment. *Id.*, at 17:1–3

As the court explained in the PSJ Decision, the Report was inadequate and the Declaration was "deficient and untimely". PSJ Decision, at 12:24–25. Thus the non-moving party had not met its burden on this critical issue and Kontrabecki was awarded partial summary judgment.[2] He was under no obligation to take discovery to prove an element of Lehman's case.

Nowhere in its Opposition to the PSJ Motion did Lehman cite Fed. R. Bankr.P. 7026, incorporating Fed.R.Civ.P. 26 ("Rule 26") or Fed. R. Bankr.P. 7037, incorporating Fed.R.Civ.P. 37 ("Rule 37"), two rules that are at the heart of the Motion to Reconsider. But in the court's view, that is exactly where those rules should have been cited and the arguments should have been made, not now as part of the Motion to Reconsider. Once Kontrabecki filed his PSJ Motion and argued that Lehman had not produced Time to Sell expert testimony, that was the time to raise Rules 26 and 37 and argue that the shortcomings in the Report were substantially justified and that any delays necessary to correct them would not prejudice Kontrabecki. It was Lehman's burden to do so, not Kontrabecki's duty to prove the opposite. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101 (9th Cir.2001). Lehman did not do then what it seeks to do now. To raise "substantial justification" and "no prejudice" now, after the grant of partial summary judgment, is not appropriate, as demonstrated by the cases discussed below. This is true notwithstanding the court's power and authority to revisit its own interlocutory orders.

It is true, as Lehman now argues, that Kontrabecki devoted much of his Reply to the Lehman Opposition to the operation of those rules, which undoubtedly has caused Lehman to argue repeatedly in the Motion to Reconsider and its Reply that the court reached the harsh consequences of the PSJ Decision on a "truncated" basis. There was nothing truncated about Lehman's ability to make those arguments before the PSJ Decision. The court acknowledges that the PSJ Decision itself struck the portions of the Declaration and the Report that dealt with Time to Sell, but since they were deficient for the reasons stated, whether they were struck or not made little difference, and partial summary judgment was granted.[3] Looked at

---

2. The adequacy of the Report and the Declaration is not addressed in the Motion to Reconsider.

3. The court made this point in its Docket Text Order of March 7, 2010: "Thus the court granted partial summary judgment on that issue. The court also struck the Report. If Kontrabecki had not filed his motion and the matter had proceeded to trial with Lehman relying only on the Debska Report, how could it have avoided the fact that it had not established the critical time to sell element of its proof? The same result would appear to follow on the motion for partial summary judgment. Striking the Report under FRCP 37 as a sanction appears in retrospect to have been

somewhat differently, had Kontrabecki not filed a Reply to the Opposition to the PSJ Motion, the outcome would have been the same. The fact that he did, and raised the Rule 26 and Rule 37 issues, cannot be held against him after Lehman lost on the PSJ Motion without even attempting to establish either "substantial justification", "no prejudice", or both.

Lehman cites numerous cases that deal with various aspects of Rules 26 and 37 and the need for the court to consider alternative forms of sanctions and to apply, where appropriate, some leniency for violations of those Rules, particularly where the violation can be substantially justified or has not caused prejudice to the other side. The vast majority of the cases, however, arise in the context of a motion in limine, a motion to exclude, or some other discovery remedy. *This case is about summary judgment.* Most if not all of Lehman's cited cases that resulted in summary judgment in favor of the party failing to comply with those rules addressed the substantial justification and prejudice issues *before* summary judgment, not afterward as in the present case. The failures resulted in summary judgment. The patterns of conduct and the outcomes reflected in these cases demonstrate why Kontrabecki remains entitled to his partial summary judgment and why the Motion to Reconsider must be denied.

For example, in *Wills v. Amerada Hess Corp.*, 379 F.3d 32 (2d Cir.2004), the district court awarded summary judgment to defendants after giving more time to the plaintiff to correct deficiencies in its pretrial presentation of evidence and expert testimony.[4] The court struck the plaintiff's expert declarations in opposition to

the defendants' motion for summary judgment because they were late. Here, the Report was deficient and the Declaration was deficient and late. Striking them or finding them inadequate, the result is the same.

In *Wong v. Regents of the University of California*, 410 F.3d 1052 (9th Cir.2005), plaintiff brought an action under the Americans with Disabilities Act. After discovery had closed and the expert disclosure deadline had passed, the defendant moved for summary judgment. The plaintiff was late in identifying his experts, contending that the issue to be dealt with by one of them (plaintiff's status as "disabled") had not been anticipated because the plaintiff did not believe the defendant was challenging his disabled status. He thus argued that the late submission and identification of the expert was substantially justified, and that defendant had not suffered any prejudice.

In rejecting those arguments the Ninth Circuit held that plaintiff's need for an expert could have been anticipated. In upholding the trial court's discretion in refusing to consider the late expert testimony, the court said:

"In these days of heavy case loads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines. The parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support

---

redundant and unnecessary; Kontrabecki sought and obtained partial summary judgment under FRBP 7056."

4. The expert was disqualified on a *Daubert* challenge, not the case here, but the outcome was the same.

severe sanctions and exclusions of evidence."

*Wong,* 410 F.3d at 1060.

Here there is no question that Time to Sell was known to all as a critical issue. Nor is there any doubt that Kontrabecki knew that Lehman intended to rely on the September 30 and December 31, 2003, dates and that it would do so with an expert other than Mr. Brogan. Maybe both sides even agreed, in November, 2008, emails, to the dates that would be used by Lehman's expert. The court will go further and presume that Kontrabecki had good reason to believe that Debska would be Lehman's expert. The key point, however, is that as of the date expert discovery closed, and later on the date Kontrabecki filed his PSJ Motion, there was no adequate expert report dealing with Time to Sell; there was no formal designation of Debska as the expert; there was nothing in the record to make Lehman's case on the issue. Kontrabecki's statement quoted above about Lehman's lack of proof was accurate.

In *Wong,* plaintiff also requested to supplement his expert's testimony under Rule 37. The court rejected that request as well, holding that to allow such supplementation would disrupt his schedule, even though the trial was "some months away." Of course, by the time Lehman filed the Declaration, trial was just weeks away.

*Barrett v. Atlantic Richfield Co.,* 95 F.3d 375 (5th Cir.1996), involving hundreds of claims arising injuries from a superfund site, is a case in which plaintiffs failed to comply with pretrial discovery orders, including very clear instructions to them what was required of their experts. As a result, the trial court, affirmed by the court of appeal, awarded summary judgment to the defendants. The court held that no plausible explanation for noncompliance had been presented and that the prejudice, as in the other cases discussed here, affected defendants' preparation of their case. The court further observed that the appellant did not even request additional time from the trial court.

Had Lehman, once confronted with Kontrabecki's exposure of a serious flaw in its case, defended the PSJ Motion by asking for a short delay to obtain more pertinent information from Debska, or to continue the imminent trial, or explained its or its counsels' noncompliance with Rule 26(a)(2) in all the detail that it has now on the Motion to Reconsider, the result might have been different. For whatever reason, it placed its bet on the Opposition to the PSJ Motion and lost.[5]

In response to plaintiff's arguments in *Barrett* that exclusion of the expert testimony was tantamount to dismissal of their claims, the court replied that the importance of the testimony "merely underscores the need for Plaintiffs to have complied with the court's deadlines or at least inform the trial judge in advance if good faith compliance was not possible." 95 F.3d at 381. In this case, as in the others, once the expert testimony was excluded the court determined that there was no evidence to demonstrate a crucial element of the plaintiff's case, and summary judgment was appropriate.

---

5. **In the PSJ Decision the court commented on Lehman's strategy:** "Here, Lehman has not provided substantial justification to cause the court to overlook the serious deficiencies of Debska's Report on the Time to Sell issue. Lehman stated at oral argument that it intends on resting its case with Debska's opinion on the Time to Sell since how long it takes to sell a property is inherent in an appraisal report. Debska's single sentence, unsupported, conclusory opinion on the Time to Sell simply and clearly does not comply with Rule 26(a)(2)(B), and her late Declaration cannot save the day." PSJ Decision at 16:15–23.

*Luke v. Family Care and Urgent Medical Clinics,* 323 Fed.Appx. 496 (9th Cir. 2009), is a medical malpractice action in which plaintiffs appealed summary judgment against them. Their late declarations in response to defendants' motion for summary judgment were submitted three months after the deadline, and plaintiffs failed to show any justification for the tardiness, nor could they rebut the court's conclusion that such a delay was not harmless in view of the fact that only ten weeks were left before trial.

The court repeated the principle that exclusion is not appropriate if failure to disclose is substantially justified or harmless, citing *Yeti By Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101 (9th Cir. 2001), but the outcome was the same, viz., with the evidence excluded plaintiffs had failed to establish a genuine issue of material fact on a critical element of their case and summary judgment followed.

In *Laser Design Int'l, LLC v. BJ Crystal, Inc.,* 2007 WL 735763 (N.D.Cal. Mar.7, 2007), the plaintiff's motion for summary judgment was met with late declarations filed by defendant. Again, citing *Yeti By Molly,* the court stressed that the defendant bore the burden of showing substantial justification and found that the burden had not been sustained when the need for the testimony could have been anticipated. Having stricken defendant's late testimony, the court awarded summary judgment to the plaintiff. Again, the case at bar follows the same pattern.

Lehman also relies on *Wendt v. Host International, Inc.,* 125 F.3d 806 (9th Cir. 1997) for its reference to a five factor test found in *Wanderer v. Johnston,* 910 F.2d 652 (9th Cir.1990). In *Wendt* the factors supported vacating a prior preclusion order directed at plaintiffs' prior counsel for failing to comply with discovery rules. Based upon the posture of the case before the court of appeals (reversing summary judgment for defendants a second time) the court observed that any prejudice as to defendants' trial preparation was dissipated: "Both parties now have ample opportunity to **begin** the expert disclosure procedure anew." 155 F.3d at 814 (emphasis added). The application of those factors has no place in the present case.

In summary, the court is mindful of the consequences to Lehman of the PSJ Decision and the importance to it of the Motion to Reconsider. Nevertheless, this is an adversarial system and Kontrabecki demonstrated initially that summary judgment on the Time to Sell issue was appropriate. All of the criticisms of him and his litigation tactics notwithstanding, Lehman's failure to make its case when it needed to and thereafter its after-the-fact pleas for relief do not offset the fundamental fairness of the outcome to Kontrabecki. He made a calculated decision to go on the offensive when he saw a gap in his opponent's proof. To deny him the goal he achieved on this record would be not be proper.

The court is concurrently entering an order denying the Motion to Reconsider, for the reasons stated herein. Counsel for the parties are directed to meet and confer about the future conduct of this adversary proceeding and to discuss the same with the court at a status conference to be held on April 13, 2010 at 9:30 A.M.